## APPLICATION OF USURY LAW.

Circuit Court of Lucas County.

GEORGE B. BOONE v. PETER L. ANDREWS ET AL.

Decided, June 27, 1907.

*Interest and Usury—Pleading—Burden and Sufficiency of Proof—Usury Law Not Applicable to Contract for Hazarding Money in Business—Advancements for Joint Venture not Usurious although Profits are Liquidated.*

1. Where usury is pleaded as a defense to a written instrument in contradiction to the terms of such instrument, the burden is on the party so asserting it, and the plea must be supported by clear and satisfactory evidence.
2. Where one person hazards, in a business to be conducted by himself and others jointly, or by such others for his benefit, money which is by agreement subjected to the risks of the business, the law as to usury does not apply.
3. An agreement whereby the first party thereto advances sums of money to be used by the second parties in conducting a business of making usurious loans and purchasing time certificates of wage earners, the profits and losses of such business to be divided and borne equally by such parties, is not usurious and is not made so by subsequent amendment whereby the first party promises to accept a stated per cent. on the moneys so advanced, as liquidated profits, or in lieu of profits. The original agreement as to apportionment of losses remained unchanged.

WILDMAN, J.; HAYNES, J., and PARKER, J., concur.

Appeal from Lucas Common Pleas Court.

This case involves the construction of a written contract entered into by and between the plaintiff, George B. Boone, upon the one part, and Peter L. Andrews and his wife, Clara L. Andrews, on the other part, together with certain amendments to said contract and an oral arrangement subsequently entered into, all read in the light of the circumstances and the acts of the parties thereunder. Briefly stated, in the year 1899 Peter L. Andrews and his wife were engaged in the business of loaning money, at large rates of interest, and buying the time of wage

earners, upon which business they were realizing large sums of money and profits.   On February 28 of that year the principal contract involved in this case was entered into.   The writing before me which embodies this contract and the subsequent amendments, except the oral arrangement to which I have already referred, reads, with said amendments, as follows:

"TOLEDO, OHIO, February —, 1899.

"This memorandum of agreement, entered into this twenty-eighth day of February, 1899, by and between Geo. B. Boone, of the first part, and Peter L. Andrews and Clara L. Andrews of the second part, witnesseth:

"The first party agrees to advance to the second parties the sum of four thousand dollars ($4,000), if he shall deem it necessary or advisable, and as much more as he may deem advisable, said sum to be used by said second parties in their business as money lenders and purchasers of time orders, said moneys so advanced to be and remain at all times the money of the first party.

"Said second parties agree to take said money and keep it invested as aforesaid for said first party, and if any of said money shall be lost, the second parties agree to pay to said first party one-half of the amount lost, and a loan which is not paid, or the interest not paid for two months, shall be deemed and treated as a loss, but all·so-called losses and interest shall be returned, one-half to first party and one-half to second party, when collected; and said second parties agree to pay to said first party the one-half of said losses determined as aforesaid at the time of each monthly settlement provided for herein.

"The first party agrees to allow to the second parties as compensation for their services herein the one-half of whatever is made as interest or profits on the use of said money and the additional sum of twenty-five dollars ($25) per month in full payment of every and all expenses.

"It is further agreed that said second parties shall make a full statement and such showing as the first party may require not later than the first of each month, beginning with the month of April, 1899, and at such other times as first party may request, and shall pay to said first party on said first of each month, one-half the interest or profits for the preceding month, and the one-half of the losses ascertained as aforesaid, less the twenty-five dollars. allowed as expenses.

"It is further agreed that all losses that may arise on loans made prior to March 1, 1899, shall be paid by the second parties.

"It is further agreed that the amount of money advanced by first party on this agreement shall be evidenced by notes given by second parties to first party.

"This agreement may be terminated at any time at the option of the first party.

"(Signed) George B. Boone; Clara L. Andrews, P. L. Andrews."

"In consideration of the payment by said second parties to the first party on the first of each month of an amount of money equal to 3 per cent. of the amount invested by said first party under above agreement at date of such payment, the first party agrees to release all claim to any share in the profits of said business for the month immediately preceding such payment.

"(Signed) George B. Boone.; Clara L. Andrews, Peter L. Andrews."

"4-1, 1899.                    TOLEDO, OHIO, March 1, 1904.

"The first party agrees to waive all claim to profits under the foregoing agreement for one year from this date, in consideration that said second parties pay to said first party such an amount as they reasonably can on the first of each month, and first party agrees to surrender to said second parties notes of the second parties or either of them, held by the first party, in the order of their dates, commencing with the oldest note, to the amount of the payments made hereunder. Said payments shall aggregate six thousand dollars for the year.

"(Signed George B. Boone; Clara L. Andrews, P. L. Andrews."

"TOLEDO, OHIO, November 1, 1905.

"The first party agrees to waive all claim to profits under the foregoing original agreement as long as the following payments shall be made to him by the second parties, viz: The second parties shall pay to the first party on the first of each month after date an amount of money equal to 6 per cent. on the money invested in the business mentioned in said agreement at the time of such payment, and also such further sum on the first of each month, so that the aggregate of such payments for any one year after date, excluding said interest payments, shall not be less than $1,800 and said last mentioned payments shall be credited upon the amount invested in said business by first party.

"In case of default by said second parties in either or any

of said payments, then this agreement shall terminate and the said original agreement shall become and be in full force.

"(Signed) George B. Boone; Clara L. Andrews, P. L. An-. drews."

The contention of the plaintiff, George B. Boone, is, that this arrangement between him and Mr. Andrews and wife constituted one of three things: First, a partnership; second, a joint venture of money and skill, or third, a trusteeship or agency; and that whichever one of these three alternative constructions be adopted, the plaintiff is entitled to an accounting from the defendants, Andrews, for the moneys placed in their hands by him under the terms of the contract.

On the other hand, it is insisted by the defendants, Andrews, that the arrangement was merely a loan of $4,000 at or about the time of the entering into this arrangement and of various sums at subsequent dates without any hazard to Boone as to the return of the money so loaned, except perhaps such hazard as may attach to any loan, as to the personal responsibility of the borrower, and that Boone was to receive as consideration for the use of this money, usurious interest. It is further contended by these defendants that Boone has been repaid the entire amount of such loans or advances, with interest at the legal rate, far in excess of that to which he is entitled.

The plaintiff has brought an action not only for an accounting, but for the appointment of a receiver and for an injunction to restrain the transfer or other disposition of any of the assets of the claimed partnership or trust, now in the hands of the defendants, Andrews. The court below appointed a receiver, who took into his possession the property claimed by the plaintiff to belong to the alleged partnership, or trustees, or agents, and also a referee to try the issues of fact and law involved in the controversy. The referee reported adversely to the claims of the plaintiff; the receivership, upon motion, was terminated and the receiver discharged and a temporary injunction which had been allowed was dissolved, and, on final decree, the court enjoined the plaintiff from attempting to collect certain notes which had been given him by the defendants, Andrews, under the terms

of said contract. From these various orders, so far as they were embodied in the final, decree, plaintiff appealed to this court and the case has been submitted to us upon the pleadings, upon all the evdience taken before the referee and some supplementary evidence orally heard by this court.

It is not of very much consequence, in our judgment, by what name we denominate the condition which arose upon the execution of this contract of February 28, 1899. It is of import-ance to ascertain the true intent and spirit of that contract as determining just what was the arrangement in contemplation of the parties when the paper was signed. It appears that some years prior to this date the parties had been engaged in a joint business, though they may not have called it a partnership; but it is not disputed by the defendants here through their counsel that they were at this prior time engaged in business together; and while ws are not informed with precision as to the date when that earlier arrangement began, it appears that in June or July, 1898—if we are to rely upon the testimony of Mr. Boone in this regard—there was a termination of that arrangement, when one Rowland seems to have taken the place of Mr. Boone in the busi-ness conducted by Mr. Andrews and wife. Some sort of a settlement was made with Mr. Boone at that time and he was partly paid an agreed indebtedness then existing in his favor. The residue, however, of a considerable indebtedness was unpaid at the time of the execution of the contract of February 28, 1899.

Much stress is laid by counsel for the defendants upon the fact that there is no mention, in terms, of a partnership, nor is the word "partner" used in this contract which is the particular subject of contention and construction; and in the opinion of the referee, or perhaps in his report, some emphasis is placed upon the fact that there had been no talk, so far as appeared by the evidence, of a partnership, so denominated. Our search of the evidence discloses the statement made by Mr. Boone, in cross-examination, I think, that he did not recall that in the con-versations between him and Mr. or Mrs. Andrews anything was said about a "partnership." It is urged upon us with much earnestness and some plausibility, perhaps, that as Mr. Boone

was a lawyer and familiar with the law pertaining to partnerships, if he had designed to enter into the relation of partner with these defendants, that fact would have been expressed with clearness in the contract, which was written by him.   A further examination, however, of this somewhat voluminous record discloses among numerous exhibits an earlier writing, signed by these same parties and written by Boone, which seems to have been made the basis of the original arrangement between them, not the one under which operations were conducted after February 28, 1899, but in the period which terminated with June or July, 1898.   This contract is known as Exhibit 24 and is attached to the other evidence offered to the referee.   It is brief and I will read it:

"This memorandum of agreement entered into between Geo. B. Boone of the first part and Peter L .Andrews and Clara L. Andrews of the second part, witnesseth:   The first party agrees to advance to the second parties so much money as he may deem advisable, said money to be invested in loans and time certificates, by the second parties.   The second parties agree to give to the first party as evidence of said sums of money so advanced their promissory notes, said notes to be payable at any time either of the parties hereto shall so elect.   The second parties further agree to keep said money invested in loans and time certificates. also to furnish to said first party a monthly statement of the amount of such loans and time certificates, and to pay to said first party his proportion of the profits shown by said statements.   It is further agreed by the parties hereto that the first and second parties shall bear in equal proportions the gain and the loss on the investments of the second parties.   It is further agreed that the title to said investments shall be and remain in the first party but shall be made in the name of Clara L. Andrews, trustee, or other proper party.

"(Signed) Geo. B. Boone; Clara L. Andrews, Peter L. Andrews.".

The similarity of several of the phrases used in this contract to those adopted in the contract of February, 1899, can not be overlooked.   In one part of the testimony of Mr. Boone he is asked what form he used in the drawing of the contract of February 28, 1899.   It is in the lnie of cross-examination, where-

in counsel were seeking to emphasize their claim that he would have been likely to adopt the term ''partnership'' if the contract had been intended to embody an agreement to enter into such a relation. In answer to one of these inquiries—the inquiry I have referred to—as to what form, if any, he adopted, he said, substantially—I have not his precise words before me at the moment—that he had the contract which they had used before, or under which they had carried on business before, the implication being that he had used that, not perhaps entirely as a form from which to draw a new contract, but as suggestive of some of the phrases in it—and that it was clearly suggestive of some of these phrases, we have no doubt. This earlier contract bears no date, but it was made at any rate some time prior to June or July, 1898, when, according to the testimony of Mr. Boone, the first arrangement terminated. It was, perhaps, not far from the the date when Mr. Boone leased certain property on South Erie street to Andrews, or to Andrews and wife, to enable them to carry on the business in which he was at that time engaged with them or into which he at that time entered, and this was, I think, three or four years prior to 1898.

This contract, Exhibit 24, provides that the title to the investments shall be in the first party, that is, Mr. Boone, although the investments should be made in the name of Clara L. Andrews, as trustee, or some other proper party. For some reason, Mr. Boone did not care, apparently, to have his name used in connection with the business; whether he did not wish to become liable in connection with it, or whether he did not care to have his name associated with it because of its effect in some other way, it is not necessary to inquire. Three is no hint that it was a usurious contract; there is nothing in the contract to indicate it; there is nothing tending to show anything of the kind; there is no claim by counsel in behalf of Mr. or Mrs. Andrews that there was any usurious contract made at the beginning of that earlier arrangement. The contract provides expressly that there shall be, not only a community of profits, but a community of losses. They are to share alike and equally in the losses as well as the profits, and, in our judg-

ment, this transaction can have amounted to nothing more and nothing less than a partnership, under well-settled rules—I am speaking now, of course, of this earlier arrangement, evidenced by the testimony of witnesses and by Exhibit 24. The same exhibit uses various other phrases, identical or almost identical, with those embodied in the contract of February 28, 1899, and one of them, of much importance, perhaps, or demand of much importance in the contract of 1899, is found embodied in the contract of the earlier date, as follows: "The second parties agree to give to the first party as evidence of said sums of money so advanced their promissory notes." * * * It was not then deemed inconsistent with the sharing of losses that the defendants, Andrews, should give their promissory notes to Boone. In the contract of February 28, 1899, we have the phrase:

"It is further agreed that the amount of money advanced by first party on this agreement shall be evidenced by notes given by second parties to first party."

In the later contract, it is not stated when those notes should be made payable, whether or not they should be negotiable or what should be their other terms, but in the earlier contract the stipulation was, that they were to be payable "at any time either of the parties hereto shall so elect."

We are inclined to think, or, at least it is my judgment, that the construction of the contract of February 28, 1899, would amount to the same result as that which is embodied and expressed in the earlier contract; that is to say, when the contract provides that the amount of money advanced shall be evidenced by notes given by the second parties to the first party, as no time of payment is given, it is left open to future arrangement between them as to when they shall be made payable. That is perhaps not precisely the arrangement which was made in the earlier contract, but it is near enough to it, so far as the purposes of this case are concerned. The important thing—and which I repeat for the purpose of emphasis—is that in the earlier contract which is unquestionably a contract in which the parties were to share losses, and under which Mr. Boone might never receive back the moneys loaned or advanced by him, it was

not deemed inconsistent with that arrangement that notes should be given as evidence of the amount which he so advanced or placed in the hands of Mr. Andrews and his wife. If that was true when that arrangement or contract was made, we may fairly infer that it was the intent of the parties in the second contract that they were to divide the profits and losses, if that contract in other respects will reasonably bear that interpretation.

The contract of February 28, 1899, does not expressly say that the first and second parties shall bear in equal proportion the gain and the losses, but it is provided that:

. "Said second parties agree to take said money and keep it invested as aforesaid for said first party, and if any of said money shall be lost, the second parties agree to pay to said first party one-half of the amount lost." * * *

I tarry there for a moment. By the terms of the notes the second parties would obligate themselves to pay back the entire amount of money received; but here is a provision that if any part of it be lost, they shall pay to the first party one-half of the amount so lost, the implication being, as we think, that they would not be required to pay back the other one-half—in other words, that as between Mr. Andrews and his wife on the one side and Mr. Boone on the other, there would be an equal division of such loss; that is to say, that they would make good to him the money which he had let them have, though lost, to the extent of one-half of it. If all the money should be lost in the venture—a contingency which, unquestionably, they did not contemplate—they would be required to give to Mr. Boone one-half of the amount.

There is a further provision in the contract, however, which I will read: "and a loan which is not paid, or the interest not paid for two months, shall be deemed and treated as a loss, but all so-called losses" (and I invite attention to the phrase "so-called") "and interest shall be returned, one-half to the first party and one-half to the second party, when collected;" * * *. In other words, at the time of the monthly settlements, as subsequently provided, if there was a default as to either principal or interest, it would be treated, provisionally as a "loss," and,

if subsequently collected, then the matter would be corrected in a subsequent accounting.    It has been argued to us with very much earnestness that the fact that notes were given is the controlling fact; that the money was to be repaid to Boone at all events, that is, the principal, and that they were talking about a loss of interest only when they spoke about a default for two months and then of the payment by the second parties to the first party of only one-half of the amounts as to which there have been such defaults and which they call "so-called losses." But one trouble with this claimed construction is, that a *loan which is not paid* or the interest not paid for two months shall be deemed and treated as a loss.    It is not simply the interest, They evidently had in contemplation a possible loss of some portion of the investment and it would be difficult to see how they could shut their eyes to such a possibility, in view of the kind of business that was being conducted.

Now these circumstances, and perhaps some others to which I might refer, aid us in the construction of this contract and weigh more forcibly with us than could have done the use of the term "partner" or "partnership" in this contract or does the drawing of a subsequent contract in which one Sherer was a partaker, in which there was an express provision for a partnership.    That is a circumstance bearing upon the likelihood of Mr. Boone's drawing a contract with the intent to enter into a relation analogous to that of partner with Mr. and Mrs. Andrews, and omitting all reference, in terms, to a partnership; but it is not more cogent than the making of another contract at a prior date in which a partnership was created with a like omission in terms.    A like omission occurs in another contract, which I will not stop to read, attached to these papers and marked Exhibit 23, an agreement which was entered into in 1896, between Mr. Boone on the one side and Mr. and Mrs. Andrews on the other, and in another writing drafted by Mr. Boone in March, 1904, known as Exhibit 25, in which Mr. Boone tendered a sort of readjustment of the affairs created by the facts I have already recited.    While he is evidently claiming the relationship to be that equivalent to a partnership, he nowhere refers to it as such,

in terms.    This may not be an important item of evidence, but
it is one of the circumstances to be considered in its bearing
upon the probabilities of the one construction or the other as to
the intent of these parties.

We have considered another question of equal importance,
indeed possibly of vital importance to the case, and that is,
whether, assuming that the contract of February 28, 1899, was
not a mere usurious loan, but was one which would be sustained
as establishing either a trust or a partnership, the status so cre-
ated may not have been terminated by the written contract of
April 1, 1899, which reads as follows:

"In consideration of the payment by said second parties to
the first party on the first of each month of an amount of money
equal to 3 per cent. of the amount invested by said fiirst
party under above agreement at date of such payment; the first
party agrees to release all claim to any share in the profits of
said business for the month immediately preceding such pay-
ment.
"(Signed) Geo. B .Boone;  Clara L. Andrews, Peter L. An-
drews.
"April 1, 1899."

If there was a termination of a relation which the law would
protect and if the parties entered into a new contract for the
retention of moneys theretofore placed by Boone in the hands
of Mr. Andrews and his wife, with an agreement that they should
be returned absolutely and that Mr. Boone should receive as
compensation for their use 3 per cent. a month, that would be
such a contract as would not be protected.    It would be treated
as one for usurious interest and the law would allow Mr. Boone,
under such circumstances, on all the moneys which he permitted
to remain in the hands of Mr. and Mrs. Andrews, interest at
the rate of 6 per cent. per annum and no more.

Let us analyze this amendment, which has been called the first
addendum to the original contract.

It is not stated that Mr. Boone makes a certain promise, in con-
sideration of a promise on the part of Mr. and Mrs. Andrews;
it does not say—to be more specific—that, in consideration of a
promise on the part of the second parties that they will pay,

the first of each month, 3 per cent. or an amount equal to 3 per cent. on the amount invested; the first party will receive such per cent. in lieu of all profits on the money. It is not recited that what Mr. Boone agrees to do is in consideration of any promise whatever by Mr. or Mrs. Andrews, but it is only in consideration of payment that he will receive such payments, we take it, as liquidated profits, and there is no agreement on their part that the liquidated profits shall amount to 3 per cent. In other words, it is a contract all in favor of Mr. and Mrs. Andrews, and there was no occasion for their signing it. They did sign it and, contemporaneously with it, paid him $120, which was 3 per cent on $4,000 which had been theretofore advanced, but we think no implication arises of a promise on their part that they will continue to do that. It seems to be a sort of a promise on his part that, as the months go by, if they will pay him 3 per cent upon the total amount of money which they shall at such times in their hands, he will componud with them.

But what was it that he really released? What is that he says he will release? Why, he says he will release all claim to any share in the profits of said business for the month immediately preceding said payment. He does not say that he will forego the return of the principal or that he will forego that part of the principal to which he is entitled under the arrangement originally made, to-wit, the principal, less one-half the reduction or impairment by loss. It may be contended that in arriving at the profit which he was to receive in each month, account was to be taken of one-half of the losses, that is, the provisional losses—the so-called losses, or losses arrived at by ascertaining what default had been made in principal or interest—and that such losses were to be taken into account before determining what should be his profit and that he was to receive 3 per cent. in lieu of such profit. And I am not sure but that contention would be right; in fact, I am inclined to think we may carry along that same idea of provisional profits and provisional losses in the monthly settlements under the contract made April 1, 1899, as under the one made February 28. But, under that view, there is no provision that they shall be released from their

agreement to make good to him in their subsequent settlements whatever has been treated as a loss, but which has turned out not to be so.

Now, in the year 1902 at some time there was an oral arrangement by which the parties agreed upon 2 per cent. interest instead of 3 per cent. as expressed in the contract of April 1, 1899, and, for a time, settlements were made upon that basis as the settlements had been made on the basis of 3 per cent. Those payments seem finally to have stopped, and, on March 1, 1904, they signed another addendum to the contract, reading: ''The first party agrees to waive all claims to profits under the foregoing agreement for one year from this date.'' He seems to have become worried about his getting anything more out of the contract, or as to what he may get out of it, and he agrees to forego all profits for a year ''in consideration that said second parties pay to said first party such an amount as they reasonably can on the first of each month, and the first party agrees to surrender to said second parties notes of the second parties or either of them, held by the first party in the order of their dates, commencing with the oldest note, to the amount of the payments made hereunder. Said payments shall aggregate $6,000 for the year.'' This was signed by the parties. This is an agreement that he will relinquish profits if they do what he stipulates there shall be a consideration for such an agreement. It is not contended that in the period of one year from March 1, 1904, they did make payments aggregating $6,000 upon these claims, so that there was no satisfaction, if this was an accord. It was not accord in the sense that it was to be a settlement of the entire claims of Mr. Boone, but it was to be relinquishment of his profits if they would make payments upon the principal to the aggregate amount of $6,000 in that year. On November 1, 1905, the final amendment was made to the contract, in which it is said:

''The first party agrees to waive all claims to profits under the foregoing original agreement as long as the following payments shall be made to him by the second parties; viz.: The second parties shall pay to the first party on the first of each month after date an amount of money equal to 6 per cent. on the money

invested in the business mentioned in said agreement at the time of such payment, and also such further sum on the first of each month, so that the aggregate of such payments for any one year after date, excluding said inetrest payments, shall not be less than $1,800, and said last mentioned peyments shall be credited upon the amount invested in said business by first party. In case of default by second parties in either or any of said payments, then their agreement shall terminate and the said original agreement shall become and be in full force.''

This is also signed by all the parties, and the words: ''and said last-mentioned payments shall be credited upon the amount invested in said business,'' should be, to some extent, emphazised in arriving at the understanding which the parties had as to the transaction at that comparatively late date.

I will not attempt to review many of the authorities cited by counsel, but our conclusion is, that the contention of plaintiff that if the money is in any sense placed or invested in the business of Mr. Andrews and his wife, so as to hazard it in the business, then no matter what per cent. is agreed upon as a basis for compensation for the use and hazard of such money, the usuary laws will not apply, is well founded. We think that that contention is supported by the authorities. We need not travel very far away from the authorities of our own state. The decision in the case of *Cunningham* v. *Green*, 23 Ohio St., 296, 298, holds:

''The statute (Rev Stat., 3179), limiting the rate of interest does not apply to an agreement of copartnership, which provides for allowing a partner, who is to bear his share of the loss, interest on the money he invests in the firm.''

If this is true as to a partnership, it is equally true as to money placed in the hands of another as an agent or trustee. There can be no escape from the conclusion that the principle which will apply to the one situation applies to the other; whether it be a relation of trust which is created, or a partnership, or a joint venture, by whatever name we may call it—for there is no magic in words—the principle is precisely the same.

The decision, *Second Nat. Bank* v. *Bank*, 13 C. C., 561, is, perhaps, not in all respects applicable, because that was a case

in which the rights of creditors were involved, and sometimes courts will hold parties to obligations as partners, when, *inter se*, they might not be such. We have here a contest between the parties who entered into the arrangement which, on the one side is claimed to have constituted a partnership and on the other side is claimed to have created the relation of debtor and creditor. The case cited, *Cunningham* v. *Green, supra,* however, the syllabus of which I have just read, is a case between partners, and the decision of the court is clear, and, as we believe, is the undoubted law, that where one person hazards in a business to be conducted by himself and another, jointly, or conducted by that other for his benefit, money which may be returned to him but which is subject to the risks of the business, then the law as to usury does not apply.

There remains, however, the consideration of an argument which must not be forgotten, and that is, that whatever may be the proper construction of this contract, if we are to treat it as meaning what it says, the law will not protect parties from the consequences of illegal contracts, no matter what form they may make their arrangements assume. In other words, we have the claim asserted, not only in argument but also in the answer of the defendants, Andrews, that this was a mere colorable contract and that it was placed in an ingenious form or phraseology to avoid the consequences of the law as to usury. This is an affirmative claim on the part of defendants and the burden rests upon them to substantiate it. We have no decision in Ohio as to the amount or degree of proof required to sustain such a claim as this. In Jones, Mortgages, Section 643, we have this language:

"The burden of proof that the mortgage is usurious is upon the mortgagor."

This is a work on mortgages and the statement of course relates to mortgages but is equally applicable to other instruments.

"He is impeaching his own obligation formally executed under seal, and must establish the facts to constitute usury beyond a reasonable doubt. An even balance of testimony is not suffi-

cient; there must be a clear preponderance. It is a defense not favored in equity; and especially when the consequence is to forfeit the whole debt, the defense is considered unconscientious. When the penalty is a forfeiture of the illegal interest, or of all the interest, even although the defense is not considered unconscientious, the rule of evidence, that the defense must be clearly made out, is applied both at law and equity.''

In our state there is no forfeiture of a debt or of all the interest, but there is a forfeiture of the illegal interest, so that the language used by Mr. Jones, if applicable at all to mere demands on notes or loans, has application here.

In the case of *White* v. *Benjamin*, 138 N. Y., 623, the court held:

''Where usury is pleaded as a defense to an obligation to pay money, as the presumption is against such a violation of law, the defendant must establish it by clear and satisfactory evidence; all the facts constituting the usury must be proved with reasonable certainty; they can not be established by mere surmise and conjecture, or by inferences entirely uncertain.''

Perhaps this decision is robbed of some of its force by the fact that the law of New York is not precisely the same as in our state as to the result of usurious contracts; but still the suggestion made, that the parties will not be presumed to have intended to do something contrary to law, is just as applicable to the laws of Ohio as of New York or any other state. It is true that no such penalty attached as to make it a crime, either felony or misdemeanor, but it is an illegal contract so that it becomes invalid and the whole contract as to the usury is so tainted that the law will not permit it; it is considered contrary to the policy of the state, and I see no reason why, upon general principles, it may not be said that a party would hardly be presumed to violate such a law or settled policy of the state.

In the case of *Morris* v. *Taylor*, 22 N. J. Eq., 438, it was held:

''To support the defense of usury, the evidence must be clear and cogent.''

In the case of *Conover* v. *Van Mater*, 18 N. J. Eq., 481, it was held:

"The burden of proof is on the party setting up the defense of usury. He must establish the facts necessary to constitute it, beyond reasonable doubt, and by a clear preponderance of testimony."

In Ohio, we have had the rule pretty well established, that, in impeaching instruments solemnly entered into by parties to evidence their arrangements, the proof must be clear. We have it in the case that engrafts a parol trust upon an absolute deed and in the case of reformation of a written instrument. In these and some other instances to which I might refer, the courts have established the rule that the proof must be clear and convincing. The parties are permitted to rely upon the obligations which they have deliberately placed upon paper, and not only will there be no presumption of something different from and antagonistic to, that which they have so written, but the proofs must be reasonably clear to establish the claim of a party that something different was intended. Upon this question we have not a word that I recall from Mr. or Mrs. Andrews, to the effect that it was arranged that this contract should take the form which it was made to take in order to avoid the statute as to usury. It is true, Mr. Andrews says that he was borrowing money from Boone, that Boone was merely loaning it, and he endeavors to make it appear that there was no such arrangement as that which was embodied in the contract. Mr. Boone, on the other hand, claims that the contract was one, as he understood it, of partnership; that he was to share in the losses as well as in the profits, and he repudiates entirely the idea that it was a mere loan. Mrs. Andrews, to a certain extent, corroborates her husband, but there is much in the testimony of both that makes us think, not, perhaps, that they were deliberately fabricating a story, but that their recollection at least, is unreliable as to the transactions on or about February 28 and March 1, 1899. It is their claim that after that written contract was presented to Mr. Andrews, Mr. Andrews signed it, although, as he asserted, it was not in accordance with the arrangement which had been entered into between him and Boone. Yet he says that before he signed it Mr. Boone handed over $4,000 to Mrs. Andrews and then allowed the contract to go

unsigned until April 1, 1899.   He makes no reasonable or adequate explanation of the fact that he finally signed a contract which he says was not in accordance with the verbal arrangement which had been made.   He says that after he and his wife had signed the addendum which bore the date of April 1, 1899, then Boone said he might as well sign the contract of February 28, and almost without argument or objection, he then signed it.   There is no adequate explanation of this fact.

There is another pregnant circumstance testified to by Mr. Boone and hardly contradicted by Mrs. Andrews or by her husband, which is not explainable upon any hypothesis that Mr. Boone was intending merely to loan these various sums of money and to receive pretended profits, but really usurious interest, and that fact is this:   That, upon the suggestion of Mrs. Andrews, as he was a partner in the business, owning a part of the furniture which was used in it, he readily assented to pay and paid over $40 as the owner of one-half of such furniture. He is corroborated in his statement by the testimony of Mr. Sherer, that Mr. and Mrs. Andrews admitted that Mr. Boone had paid for one-half of the furniture.   If he was merely loaning the money, it is hard to explain why he should be asked to pay for any part of the furniture which belonged to them and was used in the business.

One suggestion made by the referee below is worthy of notice. He says, in substance, that no accounts were made of losses from month to month.   A sufficient answer to that is, that we have no evidence that there were losses which necessitated the making of such showing from month to month.   On the other hand, Mrs. Andrews, who was a sort of bookkeeper for her husband, or for the concern, did make repeated statements as to the condition of the business and amounts of loans, and the testimony clearly indicates that even if there were losses, there were no net losses—there were net profits.   The moneys were loaned, according to the evidence, at 10 per cent. a month, so that after taking an account of any losses by reason of bad debts, after taking account of any expenditures for the business and after paying over to Mr. Boone his 3 per cent., or 2 per

cent., as the case might be, as liquidated profits there still remained a large profit to the defendants, Andrews.

I do not know that it is worth while to dwell further upon the diverse aspects of this controversy. Doubtless I have omitted the consideration of many items which, in courtesy to the attorneys and to the court below, might be mentioned; but sufficient at least has been said to indicate the strong conviction of this court that the plaintiff should succeed in his claims as asserted in his petition. We think that the evidence does not support the claim of the defendants that the parties to this instrument intended it to amount only to a loan. We think that the evidence does not sustain the other contention of the defendants, that the contract was a shift or device, a mere colorable contract, to avoid the consequences of the statute against usury. Perhaps if the defendants could maintain their claims in this regard, they might defeat the action of the plaintiff, and yet it is difficult for us not to say that the defense of usury does not come with the utmost grace from parties whose main business seems to have been the taking of usurious interest upon contracts. Our view of the whole controversy is, that the prayer of the plaintiff's petition should be granted. The judgment will be for the plaintiff. We have not attempted to make an accounting; we understand that the parties can either agree upon that and embody the result in the journal entry or, if they are unable to agree, a reference may be had.

*J. A. Barber,* for plaintiff.

*Clarence Brown, D. C. Mitchell* and *L. T. Williams,* for defendants.